IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANIE WEEKS,<br><br>    Plaintiff,<br><br>v.<br><br>THE HOUSING AUTHORITY OF<br>THE CITY OF OPP, ALABAMA,<br>*et al.*,<br><br>    Defendants. | CASE NO. 2:11-cv-1011-MEF<br>(WO – Publish) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Before the Court is Defendants' Motion to Dismiss, filed pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. (Doc. #52.) Plaintiff filed a response in opposition to the motion (Doc. #54), and Defendants filed a reply (Doc. #55). After consideration of the arguments of counsel, the applicable law, and the record as a whole, the Court finds that Defendants' motion is due to be GRANTED.

**II. JURISDICTION AND VENUE**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest venue or personal jurisdiction in this case, and the Court finds adequate allegations supporting both.

**III. BACKGROUND**

Plaintiff Janie Weeks ("Weeks" or "Plaintiff") served as the executive director of the City of Opp Housing Authority ("OHA") from 2006 until mid-2011. All of OHA's funds and operating expenditures are subject to oversight and approval by the United States Department of Housing and Urban Development ("HUD") pursuant to an Annual Contributions Contract ("ACC") between OHA and HUD. (Defs.' Ex. C at Section 11(D), Doc. #55-3; Suppl. Decl. of Charles Willis ¶ 3, Doc. #55-1.) On November 10, 2010, following an audit conducted by HUD to evaluate OHA's compliance with various federal civil rights laws, HUD issued a Letter of Determination of Non-Compliance to OHA. HUD offered to work with OHA to resolve the compliance issues pursuant to a Voluntary Compliance Agreement ("VCA"). On June 7, 2011, HUD delivered to OHA an amended version of the VCA that demanded Weeks's resignation from OHA. Although OHA tried to negotiate further with HUD on this demand, HUD would not agree to any solution that included Weeks keeping her job with OHA.

On June 23 and 24, 2011, representatives of HUD and OHA attended a public meeting with Weeks and her husband to discuss Weeks's resignation. After two days of negotiations, representatives of HUD and OHA agreed to the following severance package proposed by Weeks: Weeks would resign from OHA and return all OHA property in exchange for $125,000 severance pay and six months of continued health insurance coverage for her and her family. The parties agreed to this severance proposal, and HUD and OHA told Weeks that she would receive her severance compensation on June 29, 2011. On June 28, 2011,

however, HUD notified OHA that it would not abide by the severance agreement. Upon hearing this news, OHA attempted to place Weeks on paid administrative leave, but HUD told OHA that it was freezing its bank account to prevent OHA from compensating Weeks. HUD further informed OHA that it would not approve any payments by OHA to Weeks or provide OHA with any funding for the severance agreement. HUD also refused to approve OHA's hiring of a replacement executive director as long as Weeks remained an employee of OHA. As a result, OHA terminated Weeks's employment in October 2011.

Weeks brought suit in this Court, alleging procedural due process, equal protection, race discrimination, and breach of contract claims against OHA and various OHA employees (collectively,"Defendants"). OHA moved to join HUD as a necessary party to the action. (Doc. #14.) Weeks then amended her complaint to add HUD and its secretary, Shaun Donovan ("Donovan"), as defendants. Once joined in the action, HUD and Donovan moved for dismissal of Weeks's claims against them for lack of subject-matter jurisdiction, contending that Weeks had failed to plead an applicable waiver of sovereign immunity. HUD and Donovan further argued that because Weeks's claims against them amounted to a breach of contract claim for money damages, the Court of Federal Claims had exclusive jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491. On August 24, 2012, the Court dismissed Weeks's claims against HUD and Donovan based on sovereign immunity. (Doc. #51.)

## IV. LEGAL STANDARD

A party may move to dismiss a complaint under Rule 12(b)(7) and Rule 19 if a

required party cannot feasibly be joined in the action. *See* Fed. R. Civ. P. 12(b)(7) & 19(b). A Rule 19 analysis is a two-step process. First, the court must decide whether the absent party is "required" under Rule 19(a) and must be joined to the lawsuit if feasible. Fed. R. Civ. P. 19(a). Second, if the party is "required"[1] but cannot be joined to the lawsuit, the court must decide whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed" based on a list of factors. Fed. R. Civ. P. 19(b); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011).

The party making the 12(b)(7) motion bears the initial burden of showing that the person who was not joined is necessary for a just adjudication. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1609 (3d ed. 2001)). That being said, "[w]here an initial appraisal of the facts reveals the possibility that an unjoined party is arguably indispensable, the burden devolves upon the party whose interests are adverse to the unjoined party to negate the unjoined party's indispensability to the satisfaction of the court." *Ranger Ins. Co. v. United Hous. of New Mexico*, 488 F.2d 682, 683 (5th Cir. 1974) (quoting *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972)).[2] The proponent of a

---

[1] The amendments to Rule 19 in 2007 replaced the term "necessary" in Rule 19(a) with the term "required" and eliminated the term "indispensable" from Rule 19(b). Fed. R. Civ. P. 19, advisory committee's note. Nevertheless, many courts continue to use the terms "necessary" and "indispensable" when applying Rule 19.

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

12(b)(7) motion can satisfy its burden "by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

## V. DISCUSSION

OHA moves to dismiss Weeks's second amended complaint on the basis that HUD, a required party, cannot be joined in the action due to the confines of sovereign immunity, and therefore, the entire action is due to be dismissed. For the following reasons, the Court agrees.

**A.   HUD is a required party under Rule 19(a).**

A party is required and must be joined to the action if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). In a Rule 19(a) analysis, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) (internal quotation marks and citation omitted).

OHA argues that HUD is a required party because complete relief cannot be accorded

in its absence, and because, if Weeks prevails in her lawsuit against OHA, OHA could face multiple inconsistent obligations (*i.e.*, the Court could order that OHA compensate Weeks, while at the same time HUD directs OHA not to compensate Weeks pursuant to the VCA). In response, Weeks argues that OHA's motion should be denied as premature, as it is not yet clear from the record how much control HUD exerts over OHA's financial resources, which is significantly probative of whether HUD is indeed a required party.

The Court finds that HUD is a required party under Rule 19(a) because the Court cannot accord complete relief among the remaining parties in HUD's absence. Weeks seeks monetary damages for her termination, which she alleges violates her Fourteenth Amendment procedural due process and equal protection rights, as well as specific performance of the severance agreement reached by Weeks, OHA, and HUD on June 24, 2011. The record establishes that OHA cannot perform under the severance agreement or satisfy any possible judgment against it for violations of Weeks's constitutional rights without breaching its ACC with HUD and jeopardizing its funding for public housing projects. Indeed, under the ACC between OHA and HUD, HUD must approve all OHA expenditures. Moreover, the General Depository Agreement ("GDA") between OHA and its bank, which governs OHA's two bank accounts and makes HUD a third-party beneficiary of the agreement, prohibits the bank from honoring any of OHA's checks or payment orders if it receives written notice from HUD that no withdrawals from OHA's bank account should be permitted subject to the GDA. (Defs.' Ex. B to Reply Br., Doc. #55-2.) In sum, even if the Court ultimately determined that OHA was liable to Weeks for breach of the severance agreement, because HUD is not a party to this

6

action, the Court could not order HUD to approve the release of any payment by OHA to Weeks. Nor could the Court prevent HUD from giving written notice to OHA's bank pursuant to the GDA to stop honoring OHA's checks or payment orders, effectively allowing HUD to control OHA's ability to comply with any order or judgment of this Court that may require OHA to pay Weeks money damages on her claims in this lawsuit.

It is also clear that if the Court orders the relief Weeks requests in her second amended complaint, there is a substantial risk that OHA will face multiple inconsistent obligations within the meaning of Rule 19(a)(2)(ii). Specifically, OHA could be forced to choose between complying with the Court's order to perform under the severance agreement or complying with HUD's express directive that OHA not pay Weeks any further compensation. *See Idaho Aids Found., Inc. v. Idaho Hous. & Fin. Ass'n*, 422 F. Supp. 2d 1193, 1208 (D. Idaho 2006) (holding that HUD was a necessary party under Rule 19(a) where state housing authority's alleged violation of plaintiff's constitutional right to privacy hinged on HUD's order that housing authority get "unfettered access" to tenants' medical records); *Davis v. Day & Zimmerman*, No. CV-11-S-3738-NE, 2012 WL 1885165, at *6 (N.D. Ala. May 17, 2012) (finding that Nuclear Regulatory Commission was a required party in employee's action against a temporary staffing company that terminated him from a job at a nuclear power plant for failing to meet the commission's medical regulations).

Moreover, HUD's ability to protect its interests will be impaired if the Court awards Weeks compensation when HUD is not a party to this lawsuit. *See* Rule 19(a)(1)(B)(i). Outside of rent payments received from tenants in the housing projects operated by OHA, all

of OHA's revenue comes from HUD, and HUD has direct control over OHA's capital and operating funds. Thus, any money that would be paid to satisfy a judgment in favor of Weeks would come, in theory, from HUD's coffers, despite the fact that HUD has made clear it opposes any payments to Weeks.

**B.     This action cannot proceed in HUD's absence and, therefore, is due to be dismissed.**

Because HUD is a required party but cannot be joined in this action due to sovereign immunity, the Court must next consider whether this action should be dismissed or allowed to proceed in HUD's absence. *See, e.g.*, *Hardy v. IGT, Inc.*, No. 2:10-cv-901-WKW, 2011 WL 3583745, at *6 (M.D. Ala. Aug. 15, 2011) (proceeding to Rule 19(b) analysis after concluding that Native American tribe was necessary party that could not be joined on sovereign immunity grounds). This analysis requires the Court to consider the following Rule 19(b) factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  These factors are non-exhaustive and are not meant to exclude other "pragmatic considerations."  *Molinos*, 633 F.3d at 1344 (citing Fed. R. Civ. P. 19 advisory committee's note).  In the Court's opinion, the above factors favor dismissing Weeks's second amended complaint without prejudice rather than letting this lawsuit proceed in HUD's absence.

As to the first factor, the Court finds that both OHA and HUD will be unduly prejudiced if the action proceeds without HUD as a party.   Where a plaintiff's complaint launches an indirect attack on the conduct of a non-joined party, courts have considered the non-joined party indispensable under Rule 19(b).  *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 849 (11th Cir. 1999) (affirming district court's dismissal of case upon finding that non-joined party, a foreign corporation in charge of allocating "slots"—landing and take-off times—at London's Gatwick Airport, would be prejudiced by not being able to participate in an antitrust action that would comment on its conduct in an alleged conspiracy to favor a particular airline in slot allocations); *Boles*, 468 F.2d at 479 (reversing district court's judgment in favor of local housing authority and holding that HUD was indispensable party because plaintiff's challenges to a housing project that HUD approved constituted an "indirect[] attack" on HUD's administrative decision).

It is clear from the evidence submitted by OHA that its termination of Weeks's employment and alleged breach of the severance agreement were precipitated by HUD's demands.  The record shows that OHA was compelled to encourage Weeks to resign or to

9

terminate her employment in accordance with HUD's compliance agreement, or face losing HUD funding. Moreover, HUD's withdrawal from the severance agreement and its refusal to approve any payments by OHA to Weeks precipitated OHA's breach of the severance agreement. Indeed, HUD notified OHA that it would be freezing OHA's bank accounts to prevent OHA from paying Weeks her severance, and that HUD, which had oversight and control over OHA's two bank accounts, refused to approve any payments to Weeks from these accounts.[3] In short, if this action proceeds without HUD, OHA would be in the unenviable position of defending this action, while HUD, who in large part caused Weeks's woes, avoids this litigation altogether. Not only is this unfair to OHA, but it deprives HUD of a voice in response to Weeks's challenges that HUD's demand for Weeks's resignation and its refusal to comply with the severance agreement it reached with Weeks and OHA were improper. *See Laker Airways*, 182 F.3d at 848 (finding that non-joined party would be prejudiced "by not being able to participate in a proceeding which would, at the very least, comment upon [its conduct]").

---

[3] The Court finds HUD's actions as alleged in the second amended complaint deplorable. To this Court, the type of actions that HUD, a federal agency, is alleged to have engaged in here–unilaterally breaching a settlement agreement it negotiated and then strong-arming and bullying OHA into terminating an employee for essentially enforcing the rules or face losing its critical funding–is the exact type of bureaucratic manipulation that leaves this Court with a pungently bitter taste in its mouth. While the Court cannot condone the type of conduct HUD is alleged to have engaged in, this country has always respected, if not required, a fair process through which an aggrieved party could respond to criticism before suffering such a significant setback as the one suffered by Weeks here–losing her job–without the benefit of an unbiased hearing and a finding of fault. Unfortunately, HUD's heavy-handed tactics and apparent lack of appreciation for the crippling consequences of its actions do not obviate the doctrine of sovereign immunity and, thus, provide Weeks and OHA with little solace.

As to the second factor, the Court finds that any fashioning of relief would not substantially lessen the prejudice to OHA. At its heart, Weeks's second amended complaint challenges her termination and the breach of the severance agreement by OHA and HUD. If the Court ultimately awards Weeks the relief she requests, OHA will face a judgment for conduct that was largely precipitated by HUD's demands. OHA's compliance with any order awarding Weeks money damages would also necessitate OHA breaching its compliance agreement with HUD at the risk of future funding. Moreover, Weeks has not proposed any other protective measure the Court could take to lessen this potential prejudice to OHA.

As to the third factor, a judgment rendered in HUD's absence would be inadequate.[4] Because HUD is no longer a party to this action, it would not be bound by any order of this Court awarding Weeks the relief she requests. Thus, HUD could continue refusing to authorize any payments to Weeks and freezing OHA's bank accounts to prevent OHA from complying with any potential order from this Court requiring OHA to pay Weeks money damages.

As to the fourth factor, Weeks has an adequate, alternative remedy for the wrongs alleged in her second amended complaint. Weeks may pursue her breach of contract claims against HUD in the Court of Federal Claims. The Court is satisfied with this remedy given that it appears from the allegations in the second amended complaint and the evidence submitted that HUD is the party largely responsible for Weeks's termination from OHA and

---

[4] This factor is very closely related to the factor set forth in Rule 19(a)(1), which requires the Court to consider whether complete relief could be accorded among the existing parties.

any breach by OHA of the severance agreement reached between Weeks, OHA, and HUD.

Finally, Courts have recognized that "a contracting party is the paradigm of an indispensable party" under Rule 19(b). *Caribbean Telecomms., Ltd. v. Guy. Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009); *HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.*, No. 08-81040-CIV, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010). Parties to a contract are indispensable when a suit concerns the rights and obligations afforded by the contract. *See Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (affirming district court's dismissal of complaint where Native American tribe, which was a party to a settlement agreement between two tribes, a company, and a federal agency, could not be joined in action because the tribe enjoyed sovereign immunity); *Capitol Med. Ctr., LLC v. Amerigroup Md., Inc.*, 677 F. Supp. 2d 188, 192–93 (D.D.C. 2010) (finding that seller hospital corporation was a party to a medical services contract and thus indispensable); *CP Solutions PTE, Ltd. v. GE*, 470 F. Supp. 2d 151, 157–58 (D. Conn. 2007) (dismissing complaint for lack of jurisdiction because nondiverse company was a "party to a contract which is the subject of the lawsuit"). Plaintiff's second amended complaint alleges that HUD was involved in the severance negotiations on June 23 and 24, 2011, and was a party to the terms of the resulting severance agreement. (Second Am. Compl. ¶ 55, Doc. #26.) Because Weeks seeks monetary damages and specific performance of a contract to which HUD was allegedly a party, and which HUD allegedly breached, equity weighs in favor of dismissing the case in HUD's absence. Further, the record reveals that HUD's exertion of control over OHA in Weeks's termination from her position as Executive Director and its active role in OHA's breach of the severance agreement

gave rise to Weeks's claims in this case. Considering this, and balancing the Rule 19(b) factors, the Court cannot, in equity and good conscience, allow this case to proceed against OHA and its employees in HUD's absence.

## V. Conclusion

For the reasons stated above, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. #52) is GRANTED and Plaintiff's claims are DISMISSED without prejudice.

DONE this the 5th day of September, 2013.

/s/ Mark E. Fuller<br>UNITED STATES DISTRICT JUDGE